

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -9 P 1: 41

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STANLEY C. VEAL | CIVIL ACTION |
| Versus | NO. 04-1915 |
| BURL CAIN, WARDEN | SECTION "C" |

## ORDER AND REASONS

Before the Court is a petition for habeas corpus by Stanley Veal ("Petitioner")

pursuant to 28 U.S.C. § 2254. Petitioner, acting *pro se*, is seeking relief from his 2000

conviction for possession of cocaine, for which he was sentenced to life in prison as a

multiple offender under the Louisiana Habitual Offender Law. As grounds for relief,

Petitioner claims[1] (1) he was denied his Sixth Amendment right to effective assistance of

counsel when his attorney failed to file a motion to suppress the drugs in Petitioner's

---

[1] The order in which the claims are listed and analyzed in this opinion is different from the way the claims are presented in Petitioner's habeas petition for the sake of clarity.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

case;[2] (2) his lawyer was ineffective for failing to object at Petitioner's multiple offender

hearing when the State improperly relied upon a prior conviction that should not have

counted as a predicate offense under Louisiana's Habitual Offender Law; (3) the

evidence presented at Petitioner's multiple offender hearing was insufficient to prove that

Petitioner was a multiple offender under the Habitual Offender Law; (4) the State erred at

Petitioner's multiple offender hearing by failing to "present affirmative proof [of] the

discharge dates of the three predicate offenses" used to enhance Petitioner's sentence

under the Habitual Offender Law; and (5) the State failed to prove that Petitioner's prior

guilty pleas used to enhance his sentence under the Habitual Offender Law were

informed and voluntary as required by Boykin v. Alabama, 395 U.S. 238 (1969).  (Rec.

Doc. 1.)  For reasons set forth below, this petition is DENIED.

Petitioner is incarcerated at Louisiana State Penitentiary in Angola, Louisiana.

He was convicted on February 17, 2000, in the 24th Judicial District Court in Jefferson

Parish of possession of cocaine, in violation of La. R.S. 40:967(C).  (State Rec. Vol. 1,

Trial Transcript, February 17, 2000.)  On February 23, 2000, the trial court sentenced

Petitioner to five years at hard labor.  (State Rec. Vol. 1, Minute Entry, February 23,

2000.)  On that same date, the State filed a multiple offender bill of information, alleging

Petitioner was a third-time multiple offender under Louisiana's Habitual Offender Law,

La. R.S. 15:529.1.  (State Rec. Vol. 1, Multiple Offender Bill of Information, February

23, 2000.)  On April 6, 2000, at the multiple offender hearing, the State presented

evidence that Petitioner had pled guilty to three offenses prior to his instant conviction for

possession of cocaine: attempted armed robbery in 1984, distribution of cocaine in 1991,

---

[2] Petitioner's federal habeas petition in fact raises two separate ineffective assistance of counsel claims relating to his attorney's failure to file a suppression motion.  (Rec. Doc. 1, 23-24.)  The substance of the two claims, however, is indistinguishable and the Court has treated them as one assignment of error.

and possession of cocaine in 1995. (State Rec. Vol. 1, Multiple Offender Transcript, April 6, 2000.) The trial court consequently found Petitioner guilty of being a third-time multiple offender, vacated Petitioner's original five-year sentence and sentenced him under the Habitual Offender Law to life in prison at hard labor without the benefit of parole, probation, or suspension of sentence. (State Rec. Vol. 1, Minute Entry, April 6, 2000.)

Petitioner appealed his conviction and sentence in a timely manner to the Louisiana Fifth Circuit Court of Appeal. Petitioner, represented on appeal by Margaret Sollars of the Louisiana Appellate Project, assigned the following three errors: (1) reversible error occurred when the State was allowed to introduce evidence of "other crimes" without giving proper notice; (2) the evidence was insufficient to support the conviction; and (3) the sentence imposed was excessive. (State Rec. Vol. 1, Brief Filed on Behalf of Defendant-Appellant in the Fifth Circuit Court of Appeal, September 25, 2000.) On February 28, 2001, the Fifth Circuit Court of Appeal affirmed Petitioner's conviction and sentence in an unpublished opinion. (State Rec. Vol. 1, Fifth Circuit Opinion on Appeal from the Twenty-Fourth Judicial District Court, February 28, 2001.) Petitioner then filed a timely application for writ of certiorari to the Louisiana Supreme Court asserting the same three claims, this time acting *pro se*. The Louisiana Supreme Court denied the application without assigning reasons on February 8, 2002. (State Rec. Vol. 1, Denial of Writ, February 8, 2002.)

On April 12, 2002, Petitioner filed a petition for state post-conviction relief in the 24th Judicial District Court in Jefferson Parish. Petitioner claimed that (1) the evidence presented at Petitioner's multiple offender hearing was insufficient to prove that

3

Petitioner was a multiple offender under Louisiana's Habitual Offender Law;[3] (2) he was denied his Sixth Amendment right to effective assistance of counsel when his attorney failed to file the "necessary pre-trial motions to establish probable cause for detention, arrest, and for petitioner to be held over for trial"; and (3) the arresting officer lacked reasonable suspicion to stop Petitioner. (State Rec. Vol. 2, Uniform Application for Post-Conviction Relief, April, 2, 2002.) On May 7, 2002, the trial court denied relief as to the first two claims, but requested that the State file a response addressing Petitioner's third claim that the arresting officer lacked probable cause to stop Petitioner.[4] On June 3, 2002, Petitioner filed a supplemental petition for post-conviction relief in the trial court raising two additional claims. He argued that his attorney was ineffective for two reasons in addition to the reasons alleged in his original petition for post-conviction relief. First, Petitioner claimed his attorney was deficient for failing to challenge the State's proof as to the validity of his prior guilty pleas at his multiple offender hearing. Second, he claimed his lawyer was ineffective for not challenging the "State's failure to establish that the cleansing period had not expired." (State Rec. Vol. 2, Supplemental Application for Post-Conviction Relief, June 3, 2002.) The trial court denied both claims on November 7, 2002. (State Rec. Vol. 2, Order, November 7, 2002.)

---

[3] Subsumed under this claim, Petitioner alleged that the State's showing at the multiple offender hearing was insufficient for three separate reasons. First, he claimed that the proof was generally insufficient to show that Petitioner was the same person convicted of the prior offenses used to enhance his sentence under the recidivism statute. Second, Petitioner argued that the state failed to prove that his prior guilty pleas were constitutionally valid under Boykin. Finally, he argued that the State did not prove that Petitioner's prior convictions had "cleared the cleansing period," referring to a provision in the Habitual Offender Law that disallows the use of convictions for enhancement purposes that occurred more than ten years prior to the current offense.

[4] The district court on post-conviction relief was unclear as to whether there had ever been any ruling by the trial court on a Fourth Amendment motion to suppress, and requested that the State address this issue. As the State explained in its response to the district court, filed on June 14, 2003, the trial court had never ruled on such a motion because Petitioner's defense attorney withdrew his suppression motion before trial. There is nothing in the record that shows that the district ever ruled on Petitioner's Fourth Amendment claim on post-conviction relief.

Petitioner filed a timely appeal of the trial court's rulings. The Louisiana Fifth Circuit Court of Appeal considered both the trial court's May 7, 2002 and November 7, 2002 rulings and denied both without assigning reasons on December 30, 2002. (State Rec. Vol. 2, Denial of Writ, December 30, 2002.) Petitioner then filed a timely application for writ of certiorari to the Louisiana Supreme Court. On March 19, 2004, the Louisiana Supreme Court denied the application without assigning reasons. (State Rec. Vol. 2, Denial of Writ, March 19, 2004.) Petitioner then filed the instant habeas petition, which he signed on June 18, 2004.

Timeliness

Petitioner's federal habeas corpus petition was timely filed, as the State concedes. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a habeas petitioner bring his or her § 2254 claims within one year of the date on which his or her conviction or sentence became final.[5] AEDPA's one-year statute of limitations is

---

[5] 28 U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. §2244(d)(2); see also Fields v. Johnson, 159 F.3d 914 (5th Cir. 1998).  "'[A] properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing."  Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999) (quoting Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998)); Williams v. Cain, 217 F.3d 303 (5th Cir. 2000).

The Supreme Court noted that "finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  Clay v. United States, 537 U.S. 522, 527 (2003); see also Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003).  A defendant has ninety days to petition for writ of certiorari in the United States Supreme Court after a decision is rendered by the state's highest court.  SUP. CT. R. 13(1).  As noted above, the Louisiana Supreme Court denied Petitioner's application for supervisory writ on direct appeal on February 8, 2002.  Accordingly, Petitioner's conviction became final and AEDPA's one-year statute of limitations began to run on May 9, 2002, ninety days after the Louisiana Supreme Court's decision.

Petitioner filed his application for post-conviction relief on April 12, 2002, before AEDPA's statute of limitations began to run.  The statute of limitations remained tolled

---

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

for the duration of time in which Petitioner's application was pending in the state judicial

system; that is, until the Louisiana Supreme Court denied the application on March 19,

2004.  The limitations period then ran from that day until Petitioner signed his federal

habeas petition on June 18, 2004.  See Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir.

1995) (finding that a pleading filed by a prisoner acting *pro se* is considered to be filed

for prescriptive purposes on the date it is delivered to prison officials for mailing); see

also United States v. O'Kaine, 971 F.Supp. 1479, 1480 (S.D.Ga. 1997) (inferring that the

signature date on the movant's 28 U.S.C. § 2255 motion to vacate was the date movant

deposited the motion with prison officials for forwarding to the court.)  Ninety-one days

had elapsed on AEDPA's one-year statute of limitations by the time Petitioner filed his

federal habeas petition.  The petition is therefore timely.


<u>Exhaustion</u>


Petitioner has exhausted available state remedies as required by AEDPA.  Under

AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas

relief from the federal courts.  § 2254(b)(1)(A).  "To exhaust, a petitioner must have

fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274

F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Generally, the

exhaustion requirement is satisfied only when the grounds urged in a federal habeas

petition were previously presented to the state's highest court in a procedurally proper

manner according to state court rules.  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir.

1988).

The State argues that Petitioner has not fulfilled AEDPA's exhaustion requirement. (Rec. Doc. 6, 9.) It claims that Petitioner did not exhaust the fifth claim raised in this petition, the claim that the State failed to prove at the multiple offender hearing that Petitioner's prior guilty pleas were constitutionally valid under Boykin. Because the rest of Petitioner's claims were raised in the Louisiana Supreme Court, the State contends that the failure to exhaust the fifth claim renders the petition a so-called "mixed petition" that should be dismissed without prejudice. Id. (citing Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998)). The Court disagrees that the petition should be dismissed on exhaustion grounds for two reasons. First, reading Petitioner's various court filings in light of the Supreme Court's holding that allegations of *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519 (1972), the Court finds Petitioner's state court pleadings sufficient to conclude he exhausted his claims. Second, AEDPA provides an exception to the exhaustion requirement for claims that will be denied on the merits. 28 U.S.C. § 2254(b)(2). Because Petitioner's fifth claim is without merit, § 2254(b)(2) applies.

Regarding the disputed claim at issue, in his pleadings to the Louisiana Supreme Court, one of Petitioner's argument headers read as follows:

> During the Multi Bill Hearing and Sentencing Hearing, Defense Counsel Was Ineffective as Interpreted under the Sixth Amendment of the United States Constitution, and Article 1 § 13 under Louisiana Constitution of 1974; *and the State Failed to Meet its Burden of Proof by Presenting Incompetent Evidence.*

(State Rec. Vol. 2, Brief on Behalf of Petitioner on Application for Writs of Review and Certiorari, January 22, 2003) (emphasis added.)

In that section of his brief, Petitioner argues, "Important here, is that the State could not meet its burden of proof by introducing a 'perfect transcript' of the taking of Mr. Veal's guilty plea, or other evidence which reflects Mr. Veal was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. [State v.] Shelton; . . . Boykin v. Alabama, 89 S.Ct. 1709 (1969)." Admittedly, read in context, it is somewhat unclear from Petitioner's brief precisely what claim Petitioner intended to make. But Supreme Court precedent counsels that the Court read a *pro se* litigant's papers with appropriate benevolence, "however inartfully [they are] pleaded." Haines, 404 U.S. at 519. Taken together, Petitioner's argument header coupled with the substantive argument asserted makes it clear that Petitioner intended to argue that the State's proof was inadequate for failing to prove his prior guilty pleas satisfied the requirements of Boykin. That is precisely Petitioner's fifth claim raised in his federal habeas petition. Accordingly, the Court finds the abovementioned language sufficient to conclude that Petitioner exhausted the fifth claim asserted in his federal habeas petition.

Moreover, even if the Court did not find that Petitioner had exhausted this claim, AEDPA provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Although considerations of comity create a strong presumption in favor of generally requiring exhaustion, AEDPA's exception to the exhaustion requirement exists to prevent "useless litigation" in the state courts that could otherwise arise from rigorous adherence to the exhaustion requirement

9

for meritless claims.  See Granberry v. Greer, 481 U.S. 129, 133 (1987).  As is discussed

below, Petitioner's claim is denied as meritless.  Accordingly, the Court rejects the

State's argument for dismissal and will proceed to consider each claim on the merits.


Statement of Facts


The Louisiana Fifth Circuit Court of Appeal summarized the facts revealed at trial

in an unpublished opinion as follows:


> At trial, Deputy Wayne Williams, Jr., of the Jefferson Parish
> Sheriff's Office testified that on September 27, 1999, at approximately
> 3:50 a.m., he was patrolling Defourneaux Street which is in an area known
> for drug trafficking.  He observed a dark-colored vehicle pull to the left
> side of the roadway and a pedestrian at the driver's side window.  When
> the pedestrian noticed Deputy Williams' marked unit, he casually walked
> away.  The driver, Mr. Veal, took off abruptly and headed down
> Defourneaux Street.  Deputy Williams testified that he paced Mr. Veal
> going approximately 50 miles per hour in a 20 miles per hour zone.
>     Deputy Williams followed the defendant as he drove down
> Defourneaux Street, turned left onto Gambino Street, and then turned left
> onto Butler Drive.  The defendant began to slow down on Butler Street
> [sic] and turned left into a driveway.  As the defendant turned into the
> driveway, Deputy Williams observed an object being thrown out of the
> passenger side front window.  Deputy Williams stopped his vehicle and
> ordered the defendant out of his vehicle.  As he approached the defendant,
> he appeared nervous and uneasy.  He patted down the defendant for
> weapons, but none were found.  He then handcuffed the defendant and
> placed him in the rear of the police vehicle pending further investigation.
>     Deputy Williams went to the area where he believed the object
> thrown from the vehicle should have landed.  About three feet from the
> rear of the vehicle on a concrete surface, he located a clear plastic bag
> containing a white-yellowish powdery substance.  The concrete surface
> was free of any debris, rocks, sticks, paper, and any other objects.  He
> picked up the plastic bag and notified the K-9 division to come and
> conduct a search of the vehicle for narcotics, but no other narcotics were
> found.  After a field test was conducted and the material in the plastic bag
> tested positive for crack cocaine, Deputy Williams placed the defendant

under arrest and read him his rights. He also conducted a thorough search
of the defendant's person and found a glass tube known to be used as a
crack pipe.

     During the trial, the state presented the testimony of Edgar Dunne,
a forensic chemist with the Jefferson Parish Sheriff's Office Crime
Laboratory. Mr. Dunne was qualified as an expert in the field of
identification and analysis of controlled dangerous substances. He
explained the tests that he conducted on the substances found in the plastic
bag retrieved by Deputy Williams, and he testified that the material in the
bag was a combination of crack cocaine, or cocaine base, plus marijuana.

(State Rec. Vol. 1, Fifth Circuit Opinion on Appeal from the Twenty-Fourth Judicial

District Court, February 28, 2001.)

Standard of Review

     28 U.S.C. subsections 2254(d)(1) and (2) contain revised standards of review for

questions of fact, questions of law, and mixed questions of law and fact. Provided that

the state court adjudicated the claim on the merits, pure questions of law and mixed

question of law and fact are reviewed under § 2254(d)(1). Hill v. Johnson, 210 F.3d 481,

485 (5th Cir. 2000). Questions of fact are reviewed under § 2254(d)(2). Id.

     Regarding questions of law and mixed questions of law and fact, a federal court

must defer to the state court's decision unless it "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States

Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have
> independent meaning. A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule different from the
> governing law set forth in our cases, or if it decides a case differently than
> we have done on a set of materially indistinguishable facts. The court may
> grant relief under the "unreasonable application" clause if the state court

11

correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

### First Claim: Ineffective Assistance of Counsel – Failure to File Motion to Suppress

Petitioner claims he was denied his Sixth Amendment right to effective assistance of counsel when his attorney failed to file a pretrial motion to suppress the drugs at issue in this case.  Petitioner specifically argues that the arresting officer lacked probable cause under the Fourth Amendment to stop Petitioner and that the drugs recovered as a result should have been suppressed, but his attorney never filed a suppression motion.  Because such a motion would have been meritorious, according to Petitioner, he asserts he was prejudiced by his attorney's allegedly deficient representation.  Although Petitioner is correct that his attorney ultimately never challenged the seizure of the drugs in this case,[6] the Court finds that a suppression motion was unlikely to succeed on the merits.  Thus,

---

[6] As will be discussed below, defense counsel initially filed a suppression motion but later withdrew the motion before it was fully litigated.

12

Petitioner has failed to carry his burden required by Strickland v. Washington, 466 U.S. 668 (1984), of showing that he suffered prejudice by his counsel's performance.

To prevail on an ineffective assistance of counsel claim, Petitioner must satisfy each prong of the following two-part test established in Strickland:

> First, petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687.

Failure to satisfy either the performance or the prejudice prong is fatal to a petitioner's claim. Id.

Under Strickland's performance prong, Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness, with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992) (quoting Strickland, 466 U.S. at 688). Because there are countless ways to provide effective representation, "judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).

To demonstrate prejudice under <u>Strickland</u>, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> In fashioning the prejudice standard, the <u>Strickland</u> Court expressly rejected a more burdensome "outcome-determinative" standard; that is, a standard that would have made defendants show that counsel's deficient conduct more likely than not altered the outcome in the case. Rather, the focus of the prejudice inquiry is whether the result of a proceeding has been rendered unreliable, and thus the proceeding itself unfair, because of defense counsel's errors. <u>Id.</u>; <u>see also</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). Of particular relevance to the present case, the Supreme Court noted in <u>Kimmelman</u>:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, *the defendant must also prove that his Fourth Amendment claim is meritorious* and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

<u>Id.</u> at 375 (emphasis added); <u>see also</u> <u>Garland v. Maggio</u>, 717 F.2d 199, 205-206 (5th Cir. 1983) (rejecting petitioner's claim that his counsel was ineffective for failing to file a motion to suppress on grounds that such a motion "would not have been successful [so defendant] suffered no prejudice.").

In the case at bar, defense counsel initially filed a pretrial motion to suppress the cocaine.[7] (State Rec. Vol. 1, Motion to Suppress Confession, Identification, and Physical Evidence). At the outset of trial, however, defense counsel orally withdrew his motion because, in his opinion, it was meritless.[8] The trial court therefore never ruled on the merits of Petitioner's suppression motion and the drugs were consequently admitted into evidence. This Court need not reach the question of whether counsel's decision to withdraw the motion constituted deficient performance under Strickland; as the following analysis demonstrates, such a motion would not have succeeded on the merits and Petitioner thus cannot claim to be prejudiced by his attorney's decision.

In order to have prevailed on his motion to suppress, Petitioner would have needed to be able to prove that the traffic stop which led to the recovery of the cocaine constituted an unreasonable seizure in violation of the Fourth Amendment. The legality of a traffic stop is analyzed under the two-part framework established in Terry v. Ohio, 392 U.S. 1 (1968). To pass constitutional muster under Terry, a police officer's actions in conducting a traffic stop must be (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place."

---

[7] It should be noted that the motion defense counsel initially filed, which makes such claims as "A warrant was issued without probable cause" in a case where no warrant was in fact issued, appears to be boilerplate rhetoric submitted without in any way tailoring the motion to this particular case. The motion consists entirely of brief, conclusory statements unsupported by any facts of this case or a single legal citation. The Court is dismayed to see such careless representation, particularly in a case involving a potential life sentence.

[8] On the day of trial, defense counsel engaged in the following colloquy with the trial judge:

**THE COURT**: Is the defense ready?

**[DEFENSE COUNSEL]**: Yes, sir. Your honor, before the jury [is] brought in there is a matter of motions. I have filed motions of course in this case. There is no motion to suppress the identification because that isn't an issue here. There's [sic] no statements to be suppressed. *And the evidence was seized as part of the res (res gestae), so apparently there'll be nothing there.*

(State Rec. Vol. 1, Trial Transcript, February 17, 2000) (emphasis added).

Terry, 392 U.S. at 19-20; see also United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th

Cir. 2005).

Under the first prong, to justify a traffic stop at its inception, the police officer

must have an objectively reasonable suspicion that some sort of illegal activity, such as a

traffic violation, occurred or is about to occur, before stopping the vehicle.  Lopez-

Moreno, 420 F.3d at 431.  Reasonable suspicion exists when an officer can point to

specific and articulable facts that, taken together with rational inferences from those facts,

justify his or her suspicion that wrongdoing has occurred or is about to occur.  See, e.g.,

United States v. Santiago, 310 F.3d 336, 340 (5th Cir. 2002).  Although an officer's mere

hunch will not suffice to constitute reasonable suspicion, the suspicion need not rise to

the level of probable cause.  United States v. Arvizu, 534 U.S. 266, 274 (2002).

The second prong of the Terry analysis requires generally that "the detention must

be temporary and last no longer than is necessary to effectuate the purpose of the stop...."

United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004).  Under this prong, the

Brigham court inquired whether the police officer's actions in that case were "reasonably

related to the circumstances that justified the stop, or to dispelling his reasonable

suspicion developed during the stop."  Id.

The police officer's actions in this case would likely have been found to satisfy

both requirements under Terry had defense counsel pursued the Fourth Amendment

motion to suppress.  The facts revealed at trial demonstrated that the arresting officer,

Deputy Williams ("Williams"), had ample justification to pull Petitioner over and detain

him at least long enough to discover the presence of drugs.  According to the facts as

found by the Louisiana Fifth Circuit Court of Appeal, Williams first observed Petitioner

"pull to the left side of the roadway and a pedestrian at the driver's side window" at approximately 3:50 am "in an area known for drug trafficking." (State Rec. Vol. 1, Fifth Circuit Opinion on Appeal from the Twenty-Fourth Judicial District Court, February 28, 2001.) Although those factors, taken alone, may be insufficient to constitute reasonable suspicion under Terry, Fourth Amendment jurisprudence has recognized them as permissible factors in formulating reasonable suspicion. See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975) (recognizing that officers making a stop "may consider the characteristics of the area in which they encounter a vehicle" when formulating reasonable suspicion); see also United States v. Vasquez, 298 F.3d 354 (5th Cir.2002) (recognizing that the defendant's vehicle was traveling down a known corridor for illegal immigration and drug trafficking in its determination of reasonable suspicion). More significantly, Williams testified that when the pedestrian noticed Williams's marked police car, Petitioner "took off abruptly and headed down Defourneaux Street" driving fifty miles per hour in a twenty miles per hour zone, a clear traffic violation. (State Rec. Vol. 1, Fifth Circuit Opinion on Appeal from the Twenty-Fourth Judicial District Court, February 28, 2001.) At that point, there were specific and articulable facts that warranted a traffic stop, satisfying Terry's first requirement that the stop be justified at its inception. Terry, 392 U.S. at 19-20.

Before pulling Petitioner over, however, Williams followed Petitioner, during which time Williams observed Petitioner throw an object out of the passenger side front window. (State Rec. Vol. 1, Fifth Circuit Opinion on Appeal from the Twenty-Fourth Judicial District Court, February 28, 2001.) Because Williams witnessed Petitioner throw an object out of the window under those particular circumstances, he had cause at that

point to expand the scope of the traffic stop to include an investigation of the object thrown. Williams then stopped Petitioner and detained him long enough to retrieve the object thrown from the window. Id. The object was a clear plastic bag containing a white-yellowish powdery substance, which a field test revealed was crack cocaine. Id. Given the abovementioned facts, Williams's stop of Petitioner and resultant recovery of the drugs was "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20.

Petitioner has failed to demonstrate that a Fourth Amendment motion to suppress would have been meritorious. He therefore cannot show that he was prejudiced by his attorney's decision not to file a suppression motion, as required by Strickland. His ineffective assistance of counsel claim is thus without merit.

### Second Claim: Ineffective Assistance of Counsel – Failure to Object at Multiple Offender Hearing

Petitioner raises four separate claims regarding the evidence produced by the State at his multiple offender hearing. First, he claims that his lawyer failed to object when the State improperly relied upon a prior conviction that Petitioner argues should not have counted as a predicate offense under Louisiana's Habitual Offender Statute. (Rec. Doc. 1, 8-16.) Petitioner argues that the state relied on a 1991 conviction for distribution of cocaine under La. R.S. 40:967(A), when in fact the charges in that case were reduced to possession of cocaine pursuant to La. R.S. 40:983.[9] Petitioner asserts that under the terms of La. R.S. 40:983, the State should have been forbidden from using his 1991 drug conviction as a predicate for sentencing enhancement under the Habitual Offender Law.

---

[9] The conviction at issue here is docket number 91-1972.

He claims that his lawyer's failure to object to the use of this conviction as a predicate

offense for his life sentence in this case constituted ineffective assistance of counsel. The

Court finds that the evidence in the record belies Petitioner's factual assertion; the record

shows that he was in fact convicted of distribution of cocaine in 1991. His lawyer

therefore had no basis to object on these grounds at the multiple offender hearing and this

claim is thus without merit.

 At the time Petitioner was arrested for distribution of cocaine in 1990, there

existed a statute, La. R.S. 40:983, which allowed for leniency in sentencing for those

convicted of certain drug offenses.[10] The statute gave judges discretion to defer entering

a judgment of guilt for first time drug offenders convicted of certain enumerated drug

crimes and place such offenders on probation. Upon successful completion of the

probationary period, the statute allowed for dismissal of the charges which could not later

be deemed a conviction for purposes of sentencing enhancements. Petitioner claims that

while he was "booked on the distribution of cocaine charge [docket number 91-1972], the

charges were reduced to possession and the court placed him on two years probation

---

[10] La. R.S. 40:983, which was repealed by the 1995 Louisiana Acts, No. 1251, § 2, provided:

A. Whenever any person who has not previously been convicted of any offense under this Part pleads
guilty to or is convicted of having violated R.S. 40:966(C), R.S. 40:967(C), R.S. 40:968(C), R.S.
40:969(C), 40:970(C) of this Part, and when it appears that the best interests of the public and of the
defendant will be served, the court may, without entering a judgment of guilt and with the consent of such
person, defer further proceedings and place him on probation upon such reasonable terms and conditions as
may be required. Among such conditions the court shall order that the defendant perform not less than one
hundred hours of court-approved community service that may include manual labor.
B. Upon the defendant's violation of any of the terms or conditions of his probation, the court may enter an
adjudication of guilt and impose sentence upon such person.
C. Upon fulfillment of the terms and conditions of probation imposed in accordance with this Section, the
court shall discharge such person and dismiss the proceedings against him.
D. Discharge and dismissal under this Section shall be without court adjudication of guilt and shall not be
deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a
crime, including the additional penalties imposed for second or subsequent convictions under R.S. 40:982.
E. Discharge and dismissal under this Section may occur only once with respect to any person.

under the terms of La. R.S. 40:983." (Rec. Doc. 1, 11.)  Petitioner points to the fact that he was only sentenced to two years probation – when the mandatory minimum sentence for distribution of cocaine at the time was five years in prison – as evidence that he was not convicted of distribution of cocaine.

At Petitioner's multiple offender hearing on April 6, 2000, the State produced various documents in support of its allegation that Petitioner was a multiple offender under Louisiana's Habitual Offender Statute, La. R.S. 15:529.  (State Rec. Vol. 2, Habitual Offender Hearing, April 6, 2000.)  In particular, the State submitted evidence of Petitioner's guilty plea to distribution of cocaine on July 17, 1991, docket number 91-1972.  The evidence included a <u>Boykin</u> waiver of rights form, signed by Petitioner, which noted that Petitioner was pleading guilty to "distribution of cocaine, [La. R.S.] 40:967(A)."  (Rec. Doc. 10.)  Additionally, the State introduced a minute entry noting that Petitioner pled guilty to distribution of cocaine.  <u>Id.</u>  The evidence was admitted without objection.  (State Rec. Vol. 2, Habitual Offender Hearing, April 6, 2000.)

The evidence introduced at the multiple offender hearing conclusively demonstrates that Petitioner pled guilty to distribution of cocaine, not possession of cocaine as Petitioner asserts.  There is nothing in the record that indicates the charges were reduced or that Petitioner was sentenced under the La. R.S. 40:983.  Indeed, La. R.S. 40:967(A), which Petitioner pled guilty to, is not one of the enumerated offenses that qualifies for the lenient treatment afforded under La. R.S. 40:983.  The mere fact that Petitioner was sentenced to less than the statutory minimum for distribution of cocaine is insufficient by itself to prove that he was not in fact convicted of distribution of cocaine. There are a number of reasons why a defendant might have received a lighter sentence

than that which is mandated by statute, including the possibility that the sentencing judge

exercised his constitutional authority to deviate downward under State v. Dorthey, 623

So.2d 1276 (La. 1993)[11], or perhaps that the judge inadvertently imposed an illegally

lenient sentence.  Moreover, La. R.S. 40:983 dictates that the court "shall order that the

defendant perform not less than one hundred hours of court-approved community

service."  Petitioner's sentence for his 1991 conviction of distribution of cocaine did not

include such an order, which detracts further from his claim that he was sentenced under

La. R.S. 40:983.

Because the Court finds that the State properly relied on Petitioner's 1991

conviction for distribution as a predicate offense under the Habitual Offender Statute,

Petitioner's attorney had no basis to object to its introduction at the multiple offender

hearing.  Any such objection would likely have been overruled in any event.  Petitioner

has thus failed to satisfy either the performance or prejudice prong of Strickland, and his

claim is therefore without merit.

### Third Claim: Insufficiency of Evidence at Multiple Offender Hearing

Petitioner contends that the evidence relied upon by the State was insufficient to

meet its burden of proving Petitioner was a multiple offender under La. R.S. 15:529,

Louisiana's Habitual Offender Statute.  La. R.S. 15:529 requires that the State prove

beyond a reasonable doubt that Petitioner was the same person previously convicted of

---

[11] "If . . . when defendant is ultimately sentenced, the trial judge were to find that the punishment mandated by [the statute at issue] makes no 'measurable contribution to acceptable goals of punishment' or that the sentence amounted to nothing more than 'the purposeful imposition of pain and suffering' and is 'grossly out of proportion to the severity of the crime', he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive." Dorthey, 623 So.2d at 1280-1281.

the prior offenses used as predicates to enhance Petitioner's sentence.  LA. REV. STAT. ANN. § 15:529.1D(1)(b) (1995).  Petitioner claims that the State failed to offer any "competent evidence" of prior convictions sufficient for the sentencing judge to properly conclude Petitioner was a multiple offender under La. R.S. 15:529.  (Rec. Doc. 1, 22.) Applying the deferential standard required by 28 U.S.C. 2254(d)(2) for federal review of a state court's factual determinations, the Court finds the State's showing was sufficient for the sentencing judge to conclude the State had met its burden.

As noted above, AEDPA sets forth the standard of review of state court factual determinations.  A federal court may overturn a state court's factual findings only if the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence."  28 U.S.C. 2254(d)(2); see also Hill, 210 F.3d at 485.  A factual determination is "presumed to be correct, [and] the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The question of whether or not Petitioner was indeed convicted of the prior offenses alleged by the State is a question of fact decided by the sentencing judge.  The Court therefore applies the standard laid out in 28 U.S.C. § 2254(d)(2).

The evidence submitted by the State was sufficient for this Court to conclude that the sentencing judge's determination – that Petitioner was in fact the same person previously convicted of the prior offenses alleged by the State – was reasonable.  At the multiple offender hearing, the State introduced, without objection, the following evidence to prove Petitioner's previous convictions:

(1) A card containing Petitioner's fingerprints, taken on the day of the multiple offender hearing

(2) A bill of information, an arrest register, a <u>Boykin</u> waiver of rights form signed and initialed by Petitioner, and a minute entry detailing Petitioner's guilty plea, all pertaining to Petitioner's August 16, 1995 guilty plea to possession of cocaine in violation of La. R.S. 40:967(C) for which Petitioner was sentenced to three years in prison. Officer Virgil McKenzie testified at the multiple offender hearing that the fingerprints on the back of the certified copy of the bill of information matched those taken of Petitioner on the day of the multiple offender hearing. (State Rec. Vol. 2, Habitual Offender Hearing, April 6, 2000.)

(3) A bill of information, an arrest register, a <u>Boykin</u> waiver of rights form signed and initialed by Petitioner, and a minute entry detailing Petitioner's guilty plea, all pertaining to Petitioner's July 17, 1991 guilty plea to distribution of cocaine in violation of La. R.S. 40:967(A) for which Petitioner was given a two-year sentence suspended for two years. Officer Virgil McKenzie testified at the multiple offender hearing that the fingerprints on the back of the certified copy of the bill of information matched those taken of Petitioner on the day of the multiple offender hearing. (State Rec. Vol. 2, Habitual Offender Hearing, April 6, 2000.)

(4) A bill of information, an arrest register, a <u>Boykin</u> waiver of rights form signed and initialed by Petitioner, and a minute entry detailing Petitioner's guilty plea, all pertaining to Petitioner's March 4, 1985 guilty plea to attempted armed robbery in violation of La. R.S. 14:27:64 for which Petitioner was sentenced to eight years in prison. Officer Virgil McKenzie testified at the multiple offender hearing that the fingerprints on the back of the arrest register matched those taken of Petitioner on the day of the multiple offender hearing. (State Rec. Vol. 2, Habitual Offender Hearing, April 6, 2000.)

The State presented sound evidence that Petitioner was in fact the same person previously convicted of the offenses used as predicates under the Habitual Offender Statute. <u>See, e.g.,</u> <u>Dedmond v. Cain</u>, 2005 WL 1578086 (E.D.La. 2005) (noting "the court has found that the comparison of fingerprints from prior arrests to later offenses is valid for the purposes of sentencing.") The sentencing judge's determination that Petitioner was a multiple offender was not unreasonable. This claim is without merit.

<u>Fourth Claim: State Failed to Prove Discharge Dates at Multiple Offender Hearing</u>

Petitioner additionally argues that the State erred at his multiple offender hearing when it failed to "present affirmative proof as to the discharge dates of the three predicate offenses, which are essential elements in a habitual offender case." (Rec. Doc. 1, 17.) The Louisiana Habitual Offender Law disallows the use of convictions as predicates if "more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions." LA. REV. STAT. ANN. § 15:529.1(C)(1995). Petitioner claims that the State is required to affirmatively prove Petitioner's dates of discharge from the Department of Corrections in order to demonstrate that the so-called "Cleansing Period" of La. R.S. 15:529 does not apply. He claims that the State failed to do so here. Petitioner's claim is a state law claim and, as such, is not cognizable on federal habeas review.

The Supreme Court has emphasized that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Construction of state statutes is conclusively a matter of state law of which state courts are the final arbiters. See New York v. Ferber, 458 U.S. 747, 767 (1982) ("[T]he construction that a state court gives a state statute is not a matter subject to our review."); Gooding v. Wilson, 405 U.S. 518, 520 (1972) ("[W]e lack jurisdiction authoritatively to construe state legislation."); Seaton v. Procunier, 750 F.2d 366, 368 (5th Cir. 1985) ("We will take the word of the highest court . . . of [the state] as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law.").

24

Petitioner raised this claim in his application for state post-conviction relief. The trial court, relying on Louisiana state law,[12] determined that "where less than ten years has elapsed between convictions, it is not necessary for the State to prove discharge dates." (State Rec. Vol. 2, Order, November 7, 2002.) This Court's review of the state court's construction of their own statute is limited to deciding whether the interpretation violated the Constitution, laws or treaties of the United States. Petitioner has raised no such claim and indeed none is apparent to the Court. This claim is denied.

### Fifth Claim: State Failed to Prove Prior Guilty Pleas Satisfied Constitutional Requirements of Boykin

Petitioner argues that the State failed to prove that his prior guilty pleas, which constitute the predicate convictions triggering the heightened sentence under the Habitual Offender Statute, satisfied the requirements of Boykin. In Boykin, the United States Supreme Court held that a defendant may not plead guilty unless the court is assured that the defendant has voluntarily and intelligently waived each of the bundle of Constitutional rights to which defendants are entitled; specifically, the right to a jury trial, to right to confront one's accusers and the right against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Petitioner asserts that the case of State v. Shelton, 621 So.2d 769 (La. 1983), requires the State to prove that Petitioner's prior guilty pleas were valid under Boykin and that the State did not do so. Even if Petitioner were correct as a factual matter that the State did not offer sufficient proof that his prior guilty pleas satisfied Boykin, this claim is not reviewable on a federal habeas petition. Moreover,

---

[12] In its order, the trial court cited State v. Odom, 34,054 (La.App. 2 Cir. 11/1/00); 772 So.2d 281, 292 and State v. Martello, 98-2066 (La.App. 4 Cir. 11/17/99); 748 So.2d 1192.

Petitioner is incorrect as a matter of fact; the State presented substantial evidence that each of his prior guilty pleas satisfied Boykin. This claim is therefore without merit.

Assuming Petitioner's claim raises a violation of federal law,[13] it is one that the Supreme Court has shielded from federal habeas review. In Daniels v. United States, the Supreme Court made clear that a habeas corpus petition is an improper vehicle for lodging constitutional attacks on prior convictions used for sentencing enhancements. 532 U.S. 374 (2001). In Daniels, the Supreme Court considered a claim similar to that raised by Petitioner in this case.[14] The petitioner in Daniels argued that his sentencing enhancement under the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e), was unconstitutional in part because it was based on prior guilty pleas that were not knowing and voluntary. Id. at 377. The Supreme Court rejected his claim, noting:

> Our system affords a defendant convicted in state court numerous opportunities to challenge the constitutionality of his conviction. He may raise constitutional claims on direct appeal, in post-conviction proceedings available under state law, and in a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. These vehicles for review, however, are not available indefinitely and without limitation. . . . One of the principles vindicated by [such] limitations is a 'presumption deeply rooted in our jurisprudence: the presumption of regularity that attaches to

---

[13] On its face, Petitioner's claim is that the State's proof was insufficient to meet the requirements of Shelton, a Louisiana Supreme Court case, which may be fairly interpreted as nothing more than an assertion that his rights were violated as a matter of state law. It is well-established that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Even if the Court construes Petitioner's claim to be that *federal law* requires that the state prove that prior pleas were Boykinized before the plea may be used to enhance a sentence under a recidivism statute, it is not clear that federal law so requires. Boykin itself does not speak to the context of collateral attacks on *prior* guilty pleas used to enhance sentences; Boykin only discusses what is required to take a guilty plea in the first instance. In Louisiana, therefore, Shelton has expanded the protection afforded by Boykin, but it has done so *as a matter of state law.* Petitioner's claim only raises a federal claim if the federal constitutional right created in Boykin has been similarly expanded *under federal law.* No federal court has squarely addressed the issue of what is minimally required of a state under the federal constitution to prove the validity of prior pleas used to enhance criminal punishments. In Parke v. Raley, the Supreme Court expressly declined to answer whether States even have to allow recidivism defendants to challenge prior guilty pleas in this context at all. 506 U.S. 20, 28 (1992). If the federal constitution does not require that states allow recidivism defendants to challenge prior guilty pleas, then Petitioner's argument would not raise a federal claim.

[14] Because the petitioner in Daniels sought relief from a federal conviction, the claim in Daniels was raised in the context of a habeas petition brought pursuant to 28 U.S.C. § 2255, as opposed to § 2254.

> final judgments, even when the question is waiver of constitutional rights.'
> Parke, [506 U.S. at 29]. . . .  Were we to allow defendants sentenced under
> the ACCA to collaterally attack prior convictions through a § 2255
> motion, we would effectively permit challenges far too stale to be brought
> in their own right, and sanction an end run around statutes of limitations
> and other procedural barriers that would preclude the movant from
> attacking the prior conviction directly.  Nothing in the Constitution or our
> precedent requires such a result.

Daniels, 532 U.S. at 381-383 (internal citations omitted) (internal quotations omitted).

Daniels thus forecloses habeas corpus as an avenue for relief on this type of claim.

Even if this Court were to consider this claim on the merits, it is clear from a review of the evidence presented at the multiple offender hearing that the State presented sound evidence that each of Petitioner's prior guilty pleas satisfied Boykin.  As noted in the above section, the state presented a Boykin waiver of rights form initialed by Petitioner and signed by both Petitioner and his attorney as well as a minute entry detailing his guilty plea with regard to each of Petitioner's prior guilty pleas.  The execution of the guilty plea form carries a strong presumption of validity.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977).  The State's showing is sufficient to uphold the sentencing judge's conclusion at the multiple offender hearing that Petitioner's predicate convictions were valid.  This claim is denied.

## Conclusion

Petitioner's claims are timely, exhausted and not procedurally barred.  However, the Court finds that each assignment of error fails on the merits.

Accordingly,

**IT IS ORDERED** that Stanley C. Veal's petition for habeas corpus is **DENIED**.

New Orleans, Louisiana, this ___X___ day of December, 2005.


HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE